# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2007

Charles R. Fulbruge III
Clerk

No. 06-41235

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE JAVIER PERAZA-CHICAS

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:06-cr-00204-ALL

Before BENAVIDES, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Jose Javier Peraza-Chicas appeals from his 52-month sentence entered on his plea of guilty to illegal reentry into the United States after deportation, claiming an improper sentencing enhancement for a prior felony conviction. He also challenges the constitutionality of the sentencing enhancement regime of 8 U.S.C. § 1326(b). For the reasons that follow, we affirm the district court's sentence.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEDURAL BACKGROUND

Defendant-Appellant Jose Javier Peraza-Chicas ("Peraza") is a citizen of El Salvador. On July 20, 2004, Peraza pleaded guilty to aggravated assault in state court in Maricopa County, Arizona, arising from an incident during which he broke into his girlfriend's mother's home and threatened his girlfriend with a knife. He received a one year jail sentence and two years probation. On February 22, 2005, Peraza was released to the custody of United States Immigration and Customs Enforcement, and on October 26, 2005, he was deported through Houston to El Salvador. On March 7, 2006, United States Border Patrol agents arrested Peraza near a border checkpoint in Brooks County, Texas.

On May 2, 2006, Peraza pleaded guilty (with no plea agreement) to illegal reentry to the United States following deportation, in violation of 8 U.S.C. § 1326. Peraza had neither sought nor obtained permission from the United States Attorney General or the Secretary of Homeland Security to re-apply for admission to the United States.

Using the 2005 edition of the United States Sentencing Commission's Guidelines Manual, the presentencing report (PSR) recommended a base offense level of eight. See U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(a) (2005). The report recommended a sixteen-level enhancement for Peraza's prior Arizona conviction for aggravated assault, as a crime of violence. See id. § 2L1.2(b)(1)(A). Finally, the report recommended a three-level downward adjustment for acceptance of responsibility and timely notification of his intent to plead guilty. See id. § 3E1.1(a) & (b). This resulted in a total offense level of 21.

The PSR assessed two criminal history points for Peraza's prior conviction, see id. § 4A1.1(b), two points because he reentered the United States while still on probation, see id. § 4A1.1(d), and one point because he illegally reentered less than two years after he was released from custody, see id. § 4A1.1(e). With five

criminal history points, Peraza earned a criminal history category of III. A total offense level of 21 and a criminal history category of III subject Peraza to a punishment range of 46 to 57 months under the Guidelines. See id. ch. 5, pt. A (sentencing table). The PSR also noted that Peraza was an admitted member of the Mara-Salvatrucha (MS-13) gang, though he claimed to no longer be a member.

Peraza objected to the PSR, arguing that the Arizona statute under which he was convicted did not qualify as a "crime of violence" under the Guidelines, and that use of a prior conviction as a factor in raising the statutory maximum sentence under 8 U.S.C. § 1326 is unconstitutional.

Overruling Peraza's objections, the district court sentenced him to 52 months imprisonment, followed by three years supervised release. The district court imposed the mandatory special assessment of $100 but did not impose a fine. The district court also instructed Peraza not to be affiliated with any organized gang or gang members. Peraza timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2). The district court's characterization of Peraza's prior conviction is a question of law that we review de novo. United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005); United States v. Calderon-Pena, 383 F.3d 254, 256 (5th Cir. 2004) (en banc).

## III. DISCUSSION

A. Crime of Violence Enhancement

The Sentencing Guidelines provide a sixteen-level enhancement for a prior "crime of violence." U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A). The Guidelines' commentary defines a crime of violence as (1) any of a list of enumerated offenses, which includes "aggravated assault," or (2) "any offense under federal, state, or local law that has as an element the use, attempted use,

3

or threatened use of physical force against the person of another." Id. § 2L1.2 cmt. n.1(B)(iii).[1] The commentary does not define aggravated assault.

The Arizona aggravated assault statute under which Peraza was originally convicted provides, "A person commits aggravated assault if such person commits assault as defined in § 13-1203 under any of the following circumstances: . . . 2. If such person uses a deadly weapon or dangerous instrument." ARIZ. REV. STAT. ANN. § 13-1204(A)(2) (West 2005). Assault is defined under § 13-1203 as follows:

> A person commits assault by:
> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
> 3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Id. § 13-1203(A). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." Id. § 13-105(8).

Peraza's indictment charged that he, "on or about the 22nd day of February, 2004, using a KNIFE, a deadly weapon or dangerous instrument, intentionally placed ANA CARRASCO in reasonable apprehension of imminent physical injury . . . ." The indictment tracks the language of § 13-1203(A)(2). See United States v. Mungia-Portillo, 484 F.3d 813, 815 (5th Cir. 2007) ("In determining which subpart of the statute formed the basis for [the defendant's] conviction, . . . [we] examine 'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual

---

[1] "The commentary to § 2L1.2 is binding and is equivalent in force to the Guideline language itself, as long as the language and the commentary are not inconsistent." United States v. Guillen-Alvarez, 489 F.3d 197, 199 n.1 (5th Cir. 2007) (citing United States v. Rayo-Valdez, 302 F.3d 314, 318 n.5 (5th Cir. 2002)).

finding by the trial judge to which the defendant assented.'" (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).

Peraza argues that the district court improperly determined his prior conviction for aggravated assault to be a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A) because (1) the Arizona statute is broader than the usual meaning of aggravated assault and thus cannot be included as one of the enumerated offenses under the Guidelines; and (2) the Arizona statute lacks as an element the use, attempted use, or threatened use of physical force.

When determining whether a prior offense constitutes a crime of violence as an enumerated offense under U.S.S.G. § 2L1.2(b)(1)(A), we employ a "common sense" approach. Mungia-Portillo, 484 F.3d at 816 (citing United States v. Mendoza-Sanchez, 456 F.3d 479, 481-82 (5th Cir. 2006)). "[W]here, as here, the enhancement provision does not specifically define the enumerated offense, we must define it according to its 'generic, contemporary meaning,' and should rely on a uniform definition, regardless of the 'labels employed by the various States' criminal codes.'" United States v. Dominguez-Ochoa, 386 F.3d 639, 642-43 (5th Cir. 2004) (quoting Taylor v. United States, 495 U.S. 575, 592, 598 (1990)) (citations omitted). It is not enough merely to rely on the label a state statute applies to the offense. United States v. Fierro-Reyna, 466 F.3d 324, 326-27 (5th Cir. 2006).

We compare the generic, contemporary meaning of the crime with the state conviction, examining elements of the statute of conviction, rather than the specifics of the defendant's conduct. Id. at 328. "'When the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense,' the conviction is not a crime of violence as a matter of law." Id. at 327 (quoting United States v. Izaguirre-Flores, 405 F.3d 270, 276-77 (5th Cir. 2005)). A statute of conviction need not correlate precisely with the generic definition; "minor differences" between definitions are acceptable.

United States v. Santiesteban-Hernandez, 469 F.3d 376, 381 (5th Cir. 2006). The question before us is whether the Arizona statute exceeds the bounds of the generic, contemporary meaning of "aggravated assault" as referenced by the Sentencing Guidelines' enumerated list of offenses. We hold that it does not.

"To establish the generic contemporary meaning of an enumerated offense, we consider, inter alia, the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries." Dominguez-Ochoa, 386 F.3d at 644-45. "Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code." United States v. Torres-Diaz, 438 F.3d 529, 536 (5th Cir. 2006). Under the Model Penal Code, a person is guilty of aggravated assault if he:

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

MODEL PENAL CODE § 211.1(2). Unlike the Arizona aggravated assault statute, the Model Penal Code requires that a defendant cause or attempt to cause bodily injury to the victim. The provision of the Arizona statute under which Peraza was convicted—which adds aggravating factors (e.g., use of a deadly weapon) to elevate simple assault to aggravated assault—implicates conduct that involves neither causing nor attempting to cause bodily injury. See ARIZ. REV. STAT. § 13-1203(A)(2) ("placing another person in reasonable apprehension of imminent physical injury"). Thus, the Arizona conviction statute is broader than the Model Penal Code. It is not obvious whether that difference exceeds the "minor differences" allowed under the common sense approach.

LaFave's treatise provides little to illuminate this question:

> It seems clear that one who, with a loaded or unloaded gun, intends only to frighten his victim without shooting him has no "intent to murder" or "intent to kill," though, as we have seen, in most

jurisdictions he is guilty of simple assault if he succeeds in frightening the other. One who, in such a jurisdiction, aims an unloaded gun with intent to frighten is guilty of simple assault if he succeeds in causing apprehension, but not of aggravated assault "with a dangerous weapon," the gun being unloaded.

2 WALTER R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.3(d) (2d ed. 2007). LaFave does not address directly the question of whether threatening another with a deadly weapon can constitute aggravated assault; however, one of the cases he cites suggests that it does. See State v. Baker, 38 A. 653 (R.I. 1897) (affirming conviction of assault "with a dangerous weapon" where defendant fired a loaded pistol at the victim, intending only to scare—and succeeding only in scaring—the victim).

Black's Law Dictionary provides a mixed answer. It defines aggravated assault as "[c]riminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury, esp. by using a deadly weapon." BLACK'S LAW DICTIONARY 122 (8th ed. 2004). This seems to imply that use of a deadly weapon is only an aggravating circumstance when it is used with the intent to cause serious bodily injury. However, supporting a contrary position later in the same entry, the dictionary defines "assault with a deadly weapon" as "[a]n aggravated assault in which the defendant, using a deadly weapon, threatens the victim with death or serious bodily injury." BLACK'S LAW DICTIONARY 122 (emphasis added). Therefore, Black's Law Dictionary provides no clear support for removing Arizona's aggravated assault statute from the generic, contemporary meaning of that crime.

Peraza argues that the Arizona statute is a minority approach and thus not representative of the generic, contemporary meaning of aggravated assault. He notes that thirty-one states (including the District of Columbia) require a showing of at least causing serious bodily injury or causing bodily injury with a

deadly weapon. The remaining nineteen states, Peraza notes, have aggravated assault statutes similar to Arizona's. This, Peraza contends, places Arizona's statute in the minority of U.S. jurisdictions and therefore outside the generic, contemporary meaning of the enumerated offense. "Where only a small minority of states support a particular viewpoint regarding the generic, contemporary meaning of an enumerated offense, and where the Model Penal Code supports the contrary position, this court has rejected the position of the minority and adopted that of the Model Penal Code." Fierro-Reyna, 466 F.3d at 329 (finding a rule followed by only seven states not to be part of the generic, contemporary meaning of aggravated assault); see also Dominguez-Ochoa, 386 F.3d at 643, 646 (finding a rule followed by nine states insufficient to constitute the generic, contemporary meaning, where a larger number of states employed a different definition). However, a strict numerical approach is not dispositive. If fully twenty states (including Arizona) follow a certain approach in criminal statutes, that does not seem to us like a "small minority." Furthermore, removing nearly half of the state aggravated assault statutes from the Guidelines' enumerated list of "crimes of violence" would undermine the goal of that provision. See United States v. Rayo-Valdez, 302 F.3d 314, 317 (5th Cir. 2002) ("The [Sentencing] Commission has predetermined that, regardless of their circumstances or the way they are defined by state laws, the [enumerated] offenses are inherently violent and forceful, or inherently risk violence and use of force.").

Our previous analysis of similar statutes is instructive on this question. In Mungia-Portillo, we held that a prior conviction under the Tennessee aggravated assault statute was a crime of violence under the Guidelines' enumerated offense of aggravated assault. 484 F.3d 813. Under the relevant Tennessee statute,

(a) A person commits aggravated assault who:

8

> > (1) Commits an assault as defined in § 39-13-101, and:
> > > (A) Causes serious bodily injury to another; or
> > > (B) Uses or displays a deadly weapon ....

TENN. CODE ANN. § 39-13-102 (1991). In addition,

> (a) A person commits assault who:
> > (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> > (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
> > (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Id. § 39-13-101.

Based on the indictment, the court determined that the defendant was convicted under the definition of assault in § 39-13-101(a)(1), which was elevated to aggravated assault by meeting both aggravating factors: causing serious bodily injury and use of a deadly weapon. Mungia-Portillo, 484 F.3d at 815. The Model Penal Code and the Tennessee statute differed in their definitions of "reckless." The defendant argued that the Model Penal Code required a "depraved heart" recklessness, a higher mental state than the Tennessee statute's "mere" recklessness. Id. at 817. Nevertheless, the court compared the Tennessee law to the Model Penal Code, Wayne F. LaFave's Substantive Criminal Law treatise, and Black's Law Dictionary, and held the differences "sufficiently minor" that they did not remove it "from the family of offenses commonly known as 'aggravated assault.'" Id. (quoting United States v. Sanchez-Ruedas, 452 F.3d 409, 414 (5th Cir. 2006)).

Similarly, in United States v. Guillen-Alvarez, we concluded that the Texas aggravated assault statute is a crime of violence for purposes of the Guidelines. 489 F.3d 197, 200-01 (5th Cir. 2007). The relevant Texas statute reads:

> (a) A person commits an offense [of aggravated assault] if the person commits assault as defined in Section 22.01 and the person:

(1) causes serious bodily injury to another, including the person's spouse; or
(2) uses or exhibits a deadly weapon during the commission of the assault.

TEX. PENAL CODE ANN. § 22.02 (Vernon 2000). Under section 22.01, a person commits assault if he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Id. § 22.01.[2] The defendant argued, as Peraza does in this case, that the Texas statute was broader than the offense of aggravated assault enumerated in the Guidelines. Finding that the Texas aggravated assault statute was "identical in all material respects" to the Tennessee statutes analyzed in Mungia-Portillo and contained "only minor differences," we held the Texas statute to be a crime of violence. Guillen-Alvarez, 489 F.3d. at 200-01 ("In light of the essential similarity of the relevant provisions of the Texas aggravated assault statute and the Tennessee aggravated assault statute, we conclude that Mungia-Portillo controls this decision [and] compels the conclusion that [the defendant's] aggravated assault conviction qualifies as a conviction for the enumerated offense of 'aggravated assault' . . . .").

Given the close similarity between the relevent Tennessee, Texas, and Arizona statutes, Mungia-Portillo and Guillen-Alvarez control our decision in this case. Indeed, the Arizona statute is nearly identical to the relevant

---

[2] Based on the state court's judgment declaring the convicted offense to be "aggravated assault with a deadly weapon, to wit: a knife," we determined that the defendant was convicted under § 22.02, without considering which subsection of § 22.01 was controlling. Guillen-Alvarez, 489 F.3d at 199.

aggravated assault statutes in Tennessee and Texas, which we held to be covered under the Guidelines' enumerated list. Therefore, under our analysis of the generic, contemporary meaning of aggravated assault, and following controlling precedent, we conclude that the district did not err in finding Peraza's Arizona conviction to be a crime of violence under the Guidelines' enumerated offenses.[3]

B.     Constitutionality of § 1326(b)

Peraza's constitutional challenge to 8 U.S.C. § 1326(b) is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998). Although he argues that Almendarez-Torres was incorrectly decided and that a majority of the Supreme Court would overrule Almendarez-Torres in light of Apprendi v. New Jersey, 530 U.S. 466 (2000), we have repeatedly rejected such arguments on the basis that Almendarez-Torres remains binding. Guillen-Alvarez, 489 F.3d at 201. Peraza concedes that his argument is foreclosed and raises it here to preserve it for further review.

## IV.  CONCLUSION

We find that Peraza's prior conviction is a "crime of violence" under the Sentencing Guidelines and that his Apprendi claim is foreclosed by Supreme Court precedent. We therefore AFFIRM the sentence imposed by the district court.

AFFIRMED.

---

[3] Because we find Arizona's statute falls under the generic, contemporary meaning of aggravated assault, we need not consider whether the statute has as an element the use, attempted use, or threatened use of physical force. See U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(B)(iii).