# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-41424

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

FREDI J. SEGOVIA, also known as Edys Geovanny Segovia-Segovia,

Defendant – Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, DeMOSS, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Fredi J. Segovia, a citizen of El Salvador, pleaded guilty to being an alien found unlawfully in the United States after having been previously deported, in violation of 8 U.S.C. § 1326. The district court adopted the Presentence Investigation Report (PSR) and sentenced Segovia to 51 months of imprisonment, to be followed by three years of supervised release. On appeal, Segovia contends that the district court erred by applying a sixteen-level enhancement for a prior conviction for a crime of violence (COV). Finding no merit in Segovia's contentions, we affirm.

No. 12-41424

I.

The district court's characterization of a prior offense as a COV is a question of law we typically review *de novo. United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013). However, because Segovia did not raise his challenge to the sixteen-level enhancement in the district court, review is for plain error only. *See United States v. Chavez-Hernandez*, 671 F.3d 494, 498–99 (5th Cir. 2012). "Plain error review requires four determinations: whether there was error at all; whether it was plain or obvious; whether the defendant has been substantially harmed by the error; and whether this court should exercise its discretion to correct the error in order to prevent a manifest miscarriage of justice." *Id.* at 497. Because we find no error in the district court's ruling, we need not proceed beyond the first step of plain error review.

II.

Section 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines (U.S.S.G.) provides for a sixteen-level enhancement of a defendant's base offense level if he previously was deported after a conviction for a COV. The district court applied this enhancement to Segovia because Segovia was previously deported after a Maryland conviction for conspiracy to commit robbery with a dangerous and deadly weapon. Segovia did not object to the enhancement in the district court.

On appeal, Segovia mounts a three-pronged attack. First, Segovia argues that his conspiracy conviction cannot support a COV enhancement because conspiracy under Maryland law is broader than the generic, contemporary meaning of "conspiracy." Second, Segovia claims that the object of his conspiracy, robbery with a dangerous and deadly weapon, is not a COV because robbery under Maryland law is broader than the generic, contemporary definition of "robbery." Third, he contends that conspiracy is not

2

No. 12-41424

a COV because the essence of conspiracy is an unlawful agreement, which does not have as an element the use or attempted use of force.

## III.

The Application Notes to the Sentencing Guidelines define a COV as (1) any specifically enumerated offense[1] or (2) "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  Application Note 5 to § 2L1.2 states that conspiracy to commit a COV is also a COV.  *Id.* n.5.  However, the Guidelines do not define "conspiracy".  When the Guidelines do not define predicate offenses, we typically define them with reference to their "generic, contemporary meaning[s]."  *Taylor v. United States*, 495 U.S. 575, 598 (1990); *United States v. Dominguez-Ochoa*, 386 F.3d 639, 642 (5th Cir. 2004).  If the defendant was convicted under a state law "following the generic definition with minor variations, or a statute narrower than the generic crime, the sentence enhancement may be applied."  *United States v. Herrera*, 647 F.3d 172, 176 (5th Cir. 2011) (internal quotation marks omitted).  On the other hand, "[i]f the statute of conviction prohibits behavior that is not within the plain, ordinary meaning of the enumerated offense, the prior offense is not a 'crime of violence.'"  *United States v. Olalde-Hernandez*, 630 F.3d 372, 374 (5th Cir. 2011) (citation omitted).

### A.

Segovia's first contention is that his Maryland conspiracy conviction cannot support a sixteen-level COV enhancement because Maryland's

---

[1] The specifically enumerated offenses are: "Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, [and] burglary of a dwelling . . . ."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

definition of conspiracy is broader than the generic, contemporary meaning of the offense. In particular, Segovia argues that the generic definition of conspiracy requires an overt act in furtherance of the conspiracy, but that Maryland law does not require any overt act. Thus, according to Segovia, a Maryland conspiracy conviction cannot support a COV enhancement under the Guidelines.

In *United States v. Rodriguez-Escareno*, 700 F.3d 751, 754 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2044 (2013), we addressed the question of whether a prior conviction for conspiracy to commit a federal drug trafficking offense—which does not require an overt act in furtherance of the conspiracy—could support a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i). We held that, in the context of a conspiracy to commit federal drug trafficking crimes, we need not look outside the Guidelines for a generic, contemporary definition of a conspiracy. We reasoned that "Application Note 5 is a clear statement by the Sentencing Commission that the enhancement applies to conspiracies to commit federal drug trafficking offenses" and that "to search for a generic meaning of 'conspiracy' by employing a doctrine generally used to determine whether a state conviction is of an enumerated crime, would only becloud what is clear from the Guideline itself." *Id.* In so holding, we "impl[ied] no position on the relevance of this reasoning to applying the enhancement to convictions for conspiracies to commit state-law offenses." *Id.* at 754 n.2.

Segovia argues that the reasoning from *Rodriguez-Escareno* should not apply in the context of conspiracies to commit state-law offenses. However, after the conclusion of briefing in this case, we rejected arguments identical to those pressed by Segovia. *See United States v. Pascacio-Rodriguez*, 749 F.3d 353, 358–68 (5th Cir. 2014). In *Pascacio-Rodriguez*, we confronted the question of whether a Nevada conviction for conspiracy to commit murder constituted a COV for purposes of the § 2L1.2(b)(1)(A)(ii) enhancement. Nevada, like

Maryland, does not require proof of an overt act to support a conspiracy conviction. Although we acknowledged that *Rodriguez-Escareno*'s holding was limited to federal drug trafficking offenses, we found "no basis for concluding that the Sentencing Commission intended to create a dichotomy in § 2L1.2 between conspiracy convictions under federal law and conspiracy convictions under state law." *Pasacio-Rodriguez*, 749 F.3d at 367. Because the text of Application Note 5 does not draw any distinction between federal and state crimes, it "does not reasonably permit courts to draw such a distinction." *Id.* Thus, we held that the Sentencing Commission did not "intend[] 'conspiracy' within the meaning of Application Note 5 to require an overt act as an element of each and every conspiracy offense." *Id.*

In light of *Pasacio-Rodriguez*, we reject Segovia's argument that a Maryland conspiracy conviction cannot support a COV enhancement.

B.

Segovia's second contention is that the object of his conspiracy, robbery with a dangerous and deadly weapon, is not a COV because the Maryland definition of robbery is broader than the generic, contemporary definition of robbery. In particular, Segovia claims that generic robbery only encompasses theft of property, but that Maryland's robbery statute criminalizes theft of services. *See* Md. Code Ann., Criminal Law § 3-401(e) (West 2002) ("'Robbery' retains its judicially determined meaning except that: (1) robbery includes obtaining the service of another by force or threat of force . . . ."). Thus, Segovia argues, his Maryland robbery conviction is not an enumerated offense under § 2L1.2. *See Olalde-Hernandez*, 630 F.3d at 374 ("If the statute of conviction prohibits behavior that is not within the plain, ordinary meaning of the

enumerated offense, the prior offense is not a 'crime of violence.'" (citation omitted)).

We need not address whether robbery under Maryland law is an enumerated offense under § 2L1.2 cmt. n.1(B)(iii) because the object of Segovia's conspiracy, robbery with a dangerous and deadly weapon, fits squarely within the catch-all provision for "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Under Maryland law, "[r]obbery with a deadly weapon requires the taking of property of any value, *by force*, with a dangerous or deadly weapon." *Bellamy v. State*, 119 Md. App. 296, 306, 705 A.2d 10, 15 (1998) (emphasis added); *see also Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 395 (2003*)* ("The hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation."). Because robbery with a dangerous weapon under Maryland law requires the use of force or threatened use of force, it is a COV regardless of whether it is an enumerated offense. Conspiracy to commit a COV is also a COV. U.S.S.G. § 2L1.2 cmt. n.5. Thus, Segovia's prior conviction for conspiracy to commit robbery with a dangerous and deadly weapon subjects him to the COV sixteen-level enhancement. The district court did not err by applying that enhancement.

C.

Segovia's third contention is that conspiracy to commit robbery with a dangerous and deadly weapon does not have "as an element the use, attempted use, or threatened use of physical force" because a defendant can be convicted of conspiracy without ever attempting or attaining the object of the conspiracy—*i.e.*, without ever using force or threatening to use force. This argument is unavailing for the reasons already stated. Application Note 5 explicitly provides that "[p]rior convictions of offenses counted under

subsection (b)(1) include the offense[] of . . . conspiring . . . to commit such offenses." U.S.S.G. § 2L1.2 cmt. n.5. We have already explained that robbery with a dangerous and deadly weapon is a COV under subsection (b)(1). Thus, a conspiracy to commit robbery with a dangerous and deadly weapon is plainly within the Guidelines definition of a COV.

For the foregoing reasons, we hold that the district court did not commit error—let alone plain error—in applying the sixteen-level enhancement to Segovia. Accordingly, we AFFIRM.